[No. 21731.  *En Banc.*  March 18, 1929.]

THE STATE OF WASHINGTON, *on the Relation of Fred Kempf, as Trustee, Plaintiff*, v. THE SUPERIOR COURT FOR SPOKANE COUNTY, *Respondent*.[1]

[1]Reported in 275 Pac. 694.

*McAulay & Freece* and *Pettijohn & McCallum,* for relator.

*W. J. Parks,* for respondent.

HOLCOMB, J.—This is an original application for prohibition to prohibit the superior court in and for Spokane county from proceeding in the matter of a petition for the appointment of an administrator of the estate of Gottfried Kempf.

From the petition herein, it appears that, on April 25, 1922, relator filed a petition in the superior court for Lincoln county, praying the appointment of a trustee for the estate of Gottfried Kempf as an absentee from the state of Washington under the provisions of Rem. Comp. Stat., §§ 1715-1 to 1715-10, inclusive, relating to the conservation and administration of estates of absentees. Statutory notice of hearing on this petition was given, and on June 7, 1922, the superior court for Lincoln county made an order appointing Fred Kempf trustee of the estate of Gottfried Kempf, as an absentee from the state of Washington.

He qualified by filing bond and oath, and on June 28, 1922, letters were issued to him as trustee. He im-

mediately took, and still retains, possession of all of the property of the absentee, and, from that time to this, has administered the trust under the orders of the court and in compliance with the statute.

In his petition to the superior court for Lincoln county, petitioner alleged that, on or about June 23, 1921, Gottfried Kempf left his home in Spokane, Spokane county, Washington, and went to parts unknown; that, from that time to the day of the filing of the petition, nothing whatever had been learned as to the whereabouts of Gottfried Kempf, nor had he ever been seen by anyone, so far as petitioner had been able to learn; that efforts had been made by petitioner and other relatives to discover the whereabouts of Gottfried Kempf, which had been fruitless; that his last known place of residence was Spokane, Washington. Kempf left real and personal property in Lincoln and Spokane counties, Washington, which required care and attention, an inventory and description of which was made a part of the petition. It was alleged that, at the time of his disappearance, Kempf left a wife, Josephine D. Kempf, and three children, namely: Fred Kempf, the petitioner, Minnie Michelback and Marie Nickodemus, who were all of the heirs at law of Gottfried Kempf. It was further alleged that Josephine D. Kempf, wife of Gottfried Kempf, had secured a divorce from Gottfried Kempf, and the petitioner and his two sisters were the only heirs at law of Gottfried Kempf; that diligent search had failed to discover any last will. It was then alleged that, at the time of his disappearance, Gottfried Kempf was about sixty-three years of age, and his personal appearance and habits were briefly described.

On December 20, 1928, Josephine D. Kempf, presented her petition to the superior court for Spokane county in which she alleged that she is the widow of

Gottfried Kempf, and for more than a year prior to June 30, 1921, she and her husband had been residing together, as husband and wife, in a home provided by the husband in Spokane, Spokane county, Washington. She then alleged that, on or about that day, her husband, Gottfried Kempf, left his home in the forenoon, under circumstances related showing the most amicable relations with his wife, to go "down town," and mysteriously disappeared without cause or provocation. He never returned to his home, and diligent search being made to ascertain his whereabouts, it was shortly thereafter communicated to petitioner that Kempf had been seen on a bridge across Spokane river in that county, either on that day or the following day; that no other person had seen him at or about that time or thereafter. It was therefore alleged that the husband, Gottfried Kempf, was dead; that he died in Spokane county, Washington on about the evening of June 30, 1921, more than seven years prior to the date of the petition.

Upon presentation of the above petition, one of the judges of the superior court for Spokane county sitting in probate, assumed jurisdiction and proceeded to take testimony in support of the petition. The hearing was continued to December 24, 1928, and again to December 31, 1928, when he announced his intention to hear and determine the petition.

Relator, believing that the superior court for Lincoln county had acquired, and continued to hold, exclusive jurisdiction over the subject-matter, by virtue of the prior appointment of a trustee for the absentee, and that the superior court for Spokane county had, and could acquire no jurisdiction to entertain the petition for administration, or to hear any evidence, or to make any order whatsoever therein, and that there was no speedy or adequate remedy by appeal from such order

as might be made by the superior court for Spokane county, sued for this writ.

It is first contended that prohibition lies to prevent the threatened issuance of general letters of administration by a court without jurisdiction, and that there is no adequate remedy at law.

Relator contends that our statutes, heretofore cited, relating to estates of absentees, prescribe full and complete procedure for the administration, settlement and final distribution of all estates of absentees, and exclude from operation upon such estates the general laws governing the administration of estates of deceased persons; that a court of competent jurisdiction, having obtained jurisdiction of such matter and having appointed a trustee, being in the midst of the administration and proceeding in the manner provided by statute, cannot be ousted of its jurisdiction, and the property taken from possession of its officers by another court of coordinate jurisdiction.

*In re Guye's Estate,* 54 Wash. 264, 103 Pac. 25, 132 Am. St. 1111, is relied upon by relator to sustain the contention that prohibition lies in such a case as this. In that case, it was held that the power to grant letters of administration was purely statutory; that, in that case, decedent died, testate, nominating executors and trustees in his last will who had authority under the law to administer upon both separate and community property belonging to the deceased and his widow; that consequently a superior court which would otherwise have jurisdiction over the administration of an estate of an intestate, would have no jurisdiction to administer upon the estate of a testator under a will. It was therefore held that, since the lower court had no jurisdiction whatever, prohibition would lie to prevent the threatened issuance of letters of general administration, and that there was no

adequate remedy at law. That was a case of complete lack of jurisdiction to take control of the estate.

■■ Statutes for the conservation and distribution of the estates of absentees proceed upon the assumption that the owner of the estate is alive. *Chamberlain v. Anderson,* 195 Iowa 855, 190 N. W. 501. They are based neither upon the fact nor the presumption of the death of such absentee. *Cunnius v. Reading School District,* 198 U. S. 458; *Nelson v. Blinn,* 197 Mass. 279, 83 N. E. 889; (same case) *Blinn v. Nelson,* 222 U. S. 1.

■■ Administration, however, under a general statute for the administration of the estates of decedents, based merely upon the presumption of death arising from absence for seven years, is not binding upon the absentee and may be collaterally attacked. *Scott v. McNeal,* 154 U. S. 34; reversing same case, 5 Wash. 309, 31 Pac. 873, 34 Am. St. 863; *Chamberlain v. Anderson, supra.*

We have general statutes providing for the general administration of the estates of intestates which proceed upon the theory that the former owner is dead, of which there must be satisfactory proof.

Rem. Comp. Stat., § 1376, provides:

". . . letters . . . of administration shall be granted:

"(1) In the county of which deceased was a resident or had his place of abode at the time of his death."

Rem. Comp. Stat., § 1378, provides:

"All orders, settlements, trials and other proceedings, under this act shall be had or made in the county in which letters testamentary or of administration were granted."

It is to be noted that, in both the petition for appointment of a trustee of the Gottfried Kempf estate in Lincoln county and in the petition for administration in Spokane county in 1928, it was alleged that he

had his place of abode, at the time of his disappearance, at Spokane, in Spokane county.

The absentee statutes are special statutes and in no way attempt to repeal or supplant the probate statutes. No question is raised as to the validity of the absentee statutes: The only question raised is as to the application of the two statutes.

■ Under the probate statutes, if the fact of the death of Gottfried Kempf be established, administration and distribution of his estate should be had. Whenever death can be satisfactorily proven of a person leaving an estate, there should be administration of the estate in the county having statutory jurisdiction.

Relator contends, particularly in his reply brief, that, before the superior court for Spokane county can assume jurisdiction to determine the death of Gottfried Kempf, Josephine D. Kempf must file a petition sufficient to invoke such jurisdiction; that it affirmatively appears upon the face of her petition that she alleges Kempf to be dead by reason of certain facts surrounding his disappearance, therein set forth, but that, on the face of her petition, it affirmatively appears, not that he is dead, but that he may be presumed to be dead, from the facts alleged and his disappearance for seven years. It is therefore earnestly insisted that it clearly appears herein that the petitioner is endeavoring to probate the estate of her husband in Spokane county under a state of facts which bring her clearly within the provisions of the absentee law, under which law the superior court of Lincoln county has already assumed and retains jurisdiction.

We do not so construe the petition to the Spokane superior court. The allegations in it are that Kempf died on or about June 30, 1921, and the allegation in the petition as to his absence for more than seven

years is merely one of the circumstances to consider in determining whether or not he be in fact dead.

Circumstances are alleged which are considered as tending to show actual death. There may be satisfactory proof of death at that time, or at any time within the seven year period.

Under our statutes, the superior court for Spokane county alone has jurisdiction to pass upon the question and ascertain the fact as to whether or not Kempf died, as alleged, in Spokane county and, therefore, whether administration upon his estate as upon the estate of a deceased person, is properly necessary. *Wagner v. Alderson,* 91 Wash. 157, 157 Pac. 476.

Rem. Comp. Stat., § 1591, provides that any interested party may appeal from any final order, judgment or decree of the court, which appeal shall be conducted in the manner provided by law in appeals for civil actions.

While we have never passed upon the question, we incline to the view that an order by the superior court of Spokane county, determining the fact as to the death of Kempf and appointing or refusing to appoint an administrator, would be a final order from which an appeal would lie.

We have recently held in *State ex rel. Walker v. Superior Court,* 148 Wash. 610, 270 Pac. 126, that prohibition to review errors of law or fact is not a proper remedy where the lower tribunal has jurisdiction.

It therefore appears that the superior court for Spokane county is not proceeding without or in excess of jurisdiction under our statutes.

The writ of prohibition is denied.

All concur.