[No. 28193.  Department Two.  December 11, 1940.]

THE STATE OF WASHINGTON, *on the Relation of Calvin Philips et al., Plaintiff,* v. CALVIN S. HALL, *as Judge of the Superior Court for King County, Respondent.*[1]

[1]Reported in 108 P. (2d) 339.

*Hartman, Hartman, Simon & Coles,* for relators.

*Lyons & Orton,* for respondent.

BEALS, J.—Relators filed in this court their application for a writ of mandate requiring the trial court to enter an order dismissing, for want of prosecution, an action pending before the superior court, pursuant to Rule III, Rules of Practice (Rem. Rev. Stat. (Sup.), § 308-3), effective August 1, 1938.

During the month of February, 1932, George S. Ellis *et al.,* claiming to be the distributees under the will of George A. Shoemaker, deceased, instituted an action before the superior court for King county, being cause No. 250151 of the files of that court, against Calvin Philips *et al.,* asking for judgment in an amount in excess of $55,000 for alleged breach of two written

contracts between the deceased, George A. Shoemaker, and the defendants. June 20, 1940, the defendants in the action (relators here) served and filed a motion to dismiss the action for want of prosecution, pursuant to Rule III, above referred to. In support of their motion, relators filed several affidavits, two opposing affidavits having been filed by the plaintiffs in the action.

The motion having been brought on regularly for hearing, after argument the trial court filed a memorandum decision stating that the motion to dismiss would be denied. The defendants in the action having expressed their desire to bring the matter before this court, the trial court delayed the entry of any formal order denying the motion to afford to the defendants an opportunity to apply to this court for a writ of mandate, of which opportunity they promptly availed themselves by instituting the proceeding now before us.

Respondent appeared herein, filing a motion to dismiss and a demurrer, both upon the ground of insufficiency of facts alleged, and also a return setting forth the history of the proceedings before the superior court, and alleging that he, as trial judge, had found certain facts, as shown in the return, and had concluded that the motion to dismiss the action should be denied, and that the motion would be formally denied, unless this court should otherwise direct.

It appears without dispute that, February 24, 1932, the defendants before the superior court (relators here) appeared in the action by a motion to make the complaint more definite and certain, serving the same upon plaintiffs' counsel, Messrs. Lyons & Orton, who with co-counsel are now representing respondent judge before this court. At the time of the service of the motion, another defendant filed a demurrer to the complaint. February 15, 1933, plaintiffs' attorneys noted the issues of law then pending for hearing for

February 20, 1933, which setting was later vacated. No further proceedings of record in the action were taken until the service of relators' motion to dismiss, June 20, 1940.

The rule upon which relators rely herein became effective August 1, 1938. It is not contended that any proceedings of record whatsoever were taken in the action between that date and the service of relators' motion to dismiss.

The affidavit of John P. Hartman, one of relators' attorneys of record since the institution of the action, was filed by relators in support of their motion. In this affidavit, it is stated that the setting of a date for a hearing on the motion to make the complaint more definite and certain and the demurrer to the complaint was vacated, and the matter stricken from the motion calendar, at the request of counsel for the plaintiffs. In the affidavit of Ira D. Orton, one of plaintiffs' counsel, which was filed, with another affidavit, in resisting the motion to dismiss, it is stated that the issues of law were stricken from the calendar by agreement. It is not denied, however, that the agreement referred to was made pursuant to the request or suggestion of the plaintiffs or their counsel.

It does appear that, prior to January, 1938, there were negotiations between the parties to the action in an attempt to settle the litigation, either by defendants paying a sum of money to plaintiffs or conveying to them some property. February 6, 1934, Mr. Philips wrote Mr. Orton, stating that he would execute notes in a large amount and put up some security therefor. No agreement was reached, and January 24, 1938, Mr. Philips again wrote Mr. Orton, confirming another proposition which he had evidently recently submitted orally, and expressing willingness to convey a forty-acre tract of land in Pierce county in settlement of

the litigation. In the letter, Mr. Philips, after stating the proposition, said:

"If you conclude to submit this proposition to your clients, please ask that they reach an agreement on the matter, and I will undertake immediately to provide the funds with which to free the 40 acres of encumbrance. As this will incur some labor and expense, I do not want to approach the subject unless and until all of the persons interested in the ownership of the note have agreed to it, and possibly for your protection as well as ours, it might be well to ask them to agree to it in writing."

This letter, which indicates a definite offer which should be accepted or rejected without any considerable delay, was by Mr. Orton referred to Mr. Joseph H. Grubb, Jr., at Philadelphia, one of plaintiffs' attorneys, in order that Mr. Grubb might discuss the matter with his clients and advise Mr. Orton as to their decision. The affidavit of Mr. Grubb was filed by the plaintiffs in the action in resisting the motion to dismiss. In his affidavit, Mr. Grubb referred to the letter of January 24, 1938, stating that he submitted the letter to the plaintiffs in the action, but that the letter "was not entirely acceptable to all of the plaintiffs"; that, so far as he had been advised, the offer of settlement had not been withdrawn; and that

" . . . deponent has been hopeful that the settlement proposed, or some modified settlement, might be accepted by the plaintiffs; that, because of the number of the plaintiffs, it has taken more than the usual time needed to submit offers of settlement to them and to obtain replies from them."

The affidavits of John P. Hartman and relator Calvin Philips were before the superior court at the time of the hearing, Mr. Hartman deposing that, when Mr. Philips' letter of January 24, 1938, was by Mr. Hartman delivered to Mr. Orton, the latter stated that he

would forward it promptly to his co-counsel at Philadelphia, and should have a prompt reply; that Mr. Hartman never thereafter heard from Mr. Orton concerning the matter, nor heard from him further about the case. Mr. Philips in his affidavit stated that, during the month of January, 1938, at Mr. Orton's request, a conference was had which resulted in Mr. Philips' letter of January 24th, and that, at the conference, and before the delivery of the letter to Mr. Orton, the latter stated that he would promptly submit to his associate at Philadelphia the proposition which Mr. Philips would make, and that a prompt reply would be received. Mr. Philips further deposed that his offer was never accepted.

Apparently, the trial court was of the opinion that both parties to the action before the superior court were desirous of compromising the litigation, the defendants in the action hoping that, through improvement of business conditions, an offer acceptable to plaintiffs could be made by defendants. The trial court was apparently also influenced by the idea that the defendants in the action had never denied being indebted to the plaintiffs, and that the entry of a judgment in favor of plaintiffs would lessen the ability of the defendants to make some satisfactory financial settlement. The trial court was also of the opinion that the defendants shared with the plaintiffs responsibility for the delay in bringing the cause to trial; and that the defendants, if they intended to terminate the negotiations between the parties, should have notified plaintiffs of their intention and should have withdrawn the offer contained in Mr. Philips' letter of January 24, 1938.

In the recent case of *State ex rel. Lyle v. Superior Court*, 3 Wn. (2d) 702, 102 P. (2d) 246, a ques-

tion similar to that here presented was decided. In the course of the opinion, we said:

"In ruling upon a motion to dismiss for want of prosecution, the trial court may not, under the above-quoted rule, consider the merits of the action. True, under the rule, the court may properly refuse to dismiss where the delay was caused by the defendant. However, the failure of the defendant to take any steps to bring the case to trial or hearing is not a ground for denial of the defendant's motion to dismiss the cause for want of prosecution, since the obligation in that respect rests upon plaintiff rather than the defendant. Bancroft's Code Practice 759, § 506."

While the defendant in an action may expedite the final determination thereof by calling up for hearing preliminary questions and placing the cause upon the trial docket, to be set as soon as the action is at issue on questions of fact, a defendant is under no obligation to speed the trial, and cannot be charged with neglect if he maintains his position on the defensive, and simply meets issues of law or of fact as the plaintiff regularly calls them up for hearing. While in the case at bar it is evident that the defendants were willing to settle the case upon their own terms, and probably preferred that the action should remain dormant rather than be pressed to trial, we find nothing in the record which prevents relators from invoking the provisions of Rule III, *supra*. Relators submitted a definite proposition of settlement, in January, 1938. It is not denied that they were led to expect a reasonably prompt response to their offer, whether by way of acceptance, rejection, or counter-proposition.

No burden rested upon relators to withdraw their offer. If not accepted within a reasonable time, the offer would be deemed rejected, which rule is well stated in 17 C. J. S. 399, § 51, subd. b, as follows:

"An unaccepted offer terminates, by lapse of time,

at the expiration of the time limited for its acceptance, or, if no time is fixed in the offer, at the expiration of a reasonable time."

The offer remained without reply after January, 1938, while the inactive period upon which relators rely in invoking Rule III comprises a period of one year prior to June, 1940.

■ Counsel for respondent argue that this is not a proper case for the issuance of a writ of mandate, as that writ should not be used as a substitute for an appeal, and because the writ will only be used to compel the trial court to exercise its judicial functions and powers, and will never be used to direct or control the discretion of the trial court. The rule is correctly stated by respondent, but as in the case of *State ex rel. Lyle v. Superior Court, supra,* we find here merely a question of law, and upon the undisputed facts we see no ground for holding that the trial court was called upon to in any way exercise its judicial discretion. Our conclusion is supported by the recent case of *State ex rel. Goodnow v. O'Phelan, ante* p. 146, 106 P. (2d) 1073.

■ It is also suggested in the brief filed on behalf of respondent that the rule should in some manner function differently when sought to be applied to cases long pending before the superior court. The rule by its terms has no retroactive effect, and it is not here sought to make it so operate. The rule became effective August 1, 1938, and it was not invoked by relators herein until June, 1940. Certainly, it should not be held that the rule applies to ancient litigation with any less force than to cases less venerable.

Certain authorities are also cited on behalf of respondent, in which the principles underlying the usual motion to dismiss for want of prosecution were discussed. Entirely different questions are presented

when Rule III is invoked, the trial court having a larger discretion in passing upon a motion to dismiss for want of prosecution than in ruling upon a motion made pursuant to the rule.

It is also argued by respondent's counsel that this court should hold that relators are estopped to claim the benefit of a strict interpretation and application of the rule. We find no basis for this contention. Relators nowise misled the plaintiffs, nor lulled them into any sense of security. It would have been very easy for the plaintiffs in the action to request relators to consent that the action should continue dormant, pending negotiations, or for a fixed period, or until further notice, but nothing of the sort was even attempted. No desire to continue negotiations was manifested for over a year prior to the date relators moved to dismiss. We find no basis for holding that any estoppel operates against relators.

Our opinion in the case of *State ex rel. Lyle v. Superior Court, supra,* is controlling here, and the writ asked for by relators is accordingly granted.

BLAKE, C. J., MILLARD, SIMPSON, and JEFFERS, JJ., concur.